UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KENNETH L. BROWN,

    Plaintiff,

-vs-                                                      Case No. 6:05-cv-1141-Orl-18KRS

HARCOURT SCHOOL PUBLISHERS,

    Defendant.

## ORDER

THIS CAUSE comes before the Court upon Defendant Harcourt Inc.'s[1] Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 12, filed October 2, 2006) to which *pro se* Plaintiff Kenneth L. Brown did not respond. Plaintiff Kenneth L. Brown ("Plaintiff") brings this action against his former employer Harcourt, Inc. ("Defendant"), asserting two claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). The Court grants Defendant's motion for summary judgment.

### I. BACKGROUND

Plaintiff, an African-American male, was employed by Defendant from April 1997 until September 2004. Plaintiff was hired as a customer service representative and held that position until being promoted to Depository Specialist in January 2002. Plaintiff's duties as a Depository Specialist included customer service, filling orders, and analyzing and processing purchase

---

[1] Defendant Harcourt Inc. was incorrectly identified in the Complaint as "Harcourt School Publishers."

orders for book depositories in the United States. Plaintiff and Cheryl Minton ("Minton"), also a Depository Specialist, were together responsible for fifteen depositories—storage units that house contracted books from publishers. Minton, a white female, was the only other Depository Specialist employed by Defendant during the relevant period.

In February 2003, Carol White ("White") accepted the position of Director of Inventory Planning and Operations and became Plaintiff and Minton's supervisor. Plaintiff alleges that White was disrespectful on a regular basis and would occasionally open his desk drawer and look through his personal belongings. Plaintiff claims that White harassed him by "being a dictator, her comments, . . . her demeanor, the way she constantly spoke to [Plaintiff], . . . just the way she talked. She never talked directly to [Plaintiff]. She always talked down to [him]." (Pl.'s Dep. 61:18-22.) Plaintiff further alleges that he and Minton complained to David Fake ("Fake"), Human Resources Director, and Donna Kress ("Kress"), Director of Inventory and Planning, about the manner in which White treated them. As a result of those complaints, a meeting was held on August 28, 2003 among Plaintiff, Minton, White, Fake, and Kress. The group had a follow-up meeting on September 11, 2003. While Plaintiff alleges that at the meetings with Fake and Kress he complained that White treated him differently based on his race, he does not remember whether he specifically mentioned being harassed on the basis of his gender. Plaintiff admits that after the meetings his relationship with White improved temporarily.

In July 2004, one of the customers assigned to Plaintiff threatened to cancel its order of over $1 million due to a delay in the delivery of its books. While Plaintiff alleges that he had

forwarded the order to another department, he admits that he did not follow up on the status of the order until the client threatened to cancel. As a result, Plaintiff was removed from another project in order to work on processing this order. White told Plaintiff she would have to keep a closer watch over his purchase orders and that he needed to be more organized. In August 2004, Kress received complaints from another of Plaintiff's customers who was frustrated because Plaintiff did not know which of the customer's books were on back order. In addition, White claims that many of Plaintiff's purchase orders were lost or not being processed and that Plaintiff became belligerent when she confronted him about these issues. Plaintiff and Minton were terminated on September 21, 2004.

On November 30, 2004, Plaintiff filed a formal Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC issued its Dismissal and Notice of Rights on March 29, 2005. Plaintiff subsequently initiated this action against Defendant. (Doc. 2-1, filed August 3, 2005.)

## II. ANALYSIS

### A. Summary Judgment Standard

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see, e.g., Stachel v. City of Cape Canaveral, 51 F. Supp. 2d 1326, 1329 (M.D. Fla. 1999). Material facts are those that may affect the outcome of the case under the applicable substantive law. Disputed issues of material fact preclude the entry

of summary judgment, but factual disputes that are irrelevant or unnecessary do not. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The moving party may rely solely on the pleadings to satisfy its burden. Celotex, 477 U.S. at 323-24. A non-moving party bearing the burden of proof, however, must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories, or admissions that designate specific facts indicating there is a genuine issue for trial. Id. at 324. If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. Anderson, 477 U.S. at 249-50. Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case. Celotex, 477 U.S. at 322.

*B. Discriminatory Termination under Title VII*

Absent direct evidence of discrimination,[2] the plaintiff may prove intentional discrimination through the familiar McDonnell Douglas three-step burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). The initial burden is on the plaintiff to establish that: (1) he is a member of a protected class; (2) he was subjected to

---

[2] Plaintiff has not alleged that there is any direct evidence of discrimination. Rather, Plaintiff admits that he never heard White use any racially derogatory language toward him. (Pl.'s Dep. 69:1-4.)

adverse employment action; (3) his employer treated similarly situated employees who are not members of his class more favorably; and (4) he was qualified for the job. Rice-Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 842-43 (11th Cir. 2000). If the plaintiff establishes a *prima facie* case of discrimination, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802. "If this is accomplished, the plaintiff may then attempt to demonstrate that the proffered reason was in fact merely a pretext for the defendant's actions." Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1258 (11th Cir. 2001). Thus, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). If the plaintiff fails to create a genuine issue of material fact on the question of whether the defendant's proffered reasons for termination were pretext, the defendant is entitled to summary judgment. Rojas v. Florida, 285 F.3d 1339, 1344 (11th Cir. 2002).

Plaintiff must first establish a *prima facie* case. Defendant acknowledges that Plaintiff has satisfied the first element because he is an African-American male and thus a member of two protected classes based on race and gender. (Doc. 12 at 15.) To prove that he has suffered an adverse employment action, the plaintiff "must show a *serious and material* change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001). Plaintiff seems to allege that he suffered various adverse employment

actions even before he was terminated.³ However, "the protections of Title VII simply do not extend to everything that makes an employee unhappy." Id. at 1242 (citation and internal quotation marks omitted). In the present case, only Plaintiff's termination constitutes an adverse employment action. Nonetheless, Plaintiff has failed to establish a *prima facie* case because he has failed to show that he was treated differently from co-workers who were "similarly situated." Rice-Lamar, 232 F.3d at 842. While Plaintiff claims it was "unbearable to come to work, and it seemed as though everything [he] tried to do, [he] could never please [White]," he admits that Minton, a white female who was the only other Depository Specialist, was treated in the same manner. (Pl.'s Dep. 69:14-17, 154:24-155:7.) Moreover, Minton was also terminated on September 21, 2004. (Doc. 12 at 8.) Thus, due to the similar treatment of Plaintiff and Minton, Plaintiff has failed to establish a *prima facie* case of discriminatory termination.

Even if Plaintiff had established a *prima facie* case, Defendant is still entitled to summary judgment because Defendant has presented legitimate, nondiscriminatory reasons for terminating Plaintiff. A defendant's "intermediate burden is 'exceedingly light.'" Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997) (quoting Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994)). Thus, to comply with Title VII, a defendant "may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall

---

³ Plaintiff alleges that White complained to him about his work efficiency and timeliness even when his work was efficient and timely. (Doc. 2-1 at 2.) Such informal reprimands do not constitute a serious and material change in the terms, conditions, or privileges of Plaintiff's employment.

Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984). Courts "are not in the business of adjudging whether employment decisions are prudent or fair," but rather, their "sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999). Defendant has articulated that Plaintiff's termination was based on his performance deficiencies. (Doc. 12 at 22.) Specifically, Defendant notes Plaintiff's "failure to follow up on a million dollar order . . . , his inability to keep track of and timely input purchase orders, his refusal to acknowledge the need to improve his performance, and his insubordination when confronted with these issues." (Id.) Thus, Defendant has met its burden of demonstrating a legitimate, nondiscriminatory reason for terminating Plaintiff.

Plaintiff has the opportunity to demonstrate that Defendant's articulated reason for termination is a "mere pretext for discrimination." Holifield, 115 F.3d at 1565. In other words, "the ultimate issue in the case becomes whether the plaintiff has proven that the employer intentionally discriminated against him because of his race." Id. This inquiry "centers upon the employer's beliefs, and not the employee's own perceptions of his performance." Id. Indeed, "[t]he factual issue to be resolved is not the wisdom or accuracy of [the defendant's] conclusion that [the plaintiff] was an unsatisfactory employee," but rather, "the question the factfinder must answer is whether [the defendant's] proffered reasons were a coverup for a . . . discriminatory decision." Rojas, 285 F.3d at 1342 (internal quotation marks omitted). Plaintiff's "assertions of his own good performance are insufficient to defeat summary judgment, in the absence of other evidence." Holifield, 115 F.3d at 1565. The Eleventh Circuit has stated that "[j]udges are

responsible for drawing the lines on what evidence is sufficient to create an issue on pretext." Rojas, 285 F.3d at 1344. Plaintiff has failed to present any evidence of pretext except to assert that he was not responsible for any delay in the processing of orders. Accordingly, Defendant is entitled to summary judgment on the discriminatory termination claim.

*C. Retaliation under Title VII*

Plaintiff claims that he was terminated in retaliation for having complained to Defendant's Human Resources Department about White's treatment toward him. In order to establish a Title VII retaliation claim, the plaintiff must prove the following elements: "(1) [he] participated in an activity protected by Title VII; (2) [he] suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000). Just as with the disparate treatment claim, the McDonnell Douglas three-step burden-shifting framework applies. Goldsmith v. City of Atmore, 996 F.2d 1155, 1162-63 (11th Cir. 1993).

"Statutorily protected expression includes internal complaints . . . ." Pipkins v. City of Temple Terrace, 267 F.3d 1197, 1201 (11th Cir. 2001). Plaintiff alleges that he engaged in protected activity at the meeting on August 28, 2003 by complaining to Kress and Fake that White was harassing him on the basis of his race. (Pl.'s Dep. 63:23-64:1.) Plaintiff, however, does not remember complaining that he was discriminated on the basis of gender. (Pl.'s Dep. 64:2--66:23.) Plaintiff alleges that he made further complaints regarding racial discrimination at the follow-up meeting on September 11, 2003. (Pl.'s Dep. 73:16-75:10.) While Plaintiff's

termination constituted an adverse employment action, he has failed to establish a *prima facie* case of retaliation. "To establish a causal connection, a plaintiff must show that 'the decision-maker[s] [were] aware of the protected conduct,' and 'that the protected activity and the adverse action were not wholly unrelated.'" Gupta, 212 F.3d at 590 (quoting Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999)). Plaintiff claims that he was terminated in September 2004 in retaliation for complaints he allegedly made in August and September 2003. However, Plaintiff has failed to show that these events, which occurred one year apart, were causally related. The Supreme Court has stated that in the absence of other evidence, in order for "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action [to constitute] sufficient evidence of causality . . . the temporal proximity must be 'very close.'" Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citation omitted). A delay of over one year between Plaintiff's alleged complaints and his termination is too long to establish that the complaints and termination were related. Thus, Plaintiff has failed to establish a *prima facie* case.

Even if Plaintiff established a *prima facie* case of retaliation, Defendant has proffered nondiscriminatory reasons for Plaintiff's termination. Again, Plaintiff has failed to present any evidence of pretext. Defendant is therefore entitled to summary judgment on the retaliation claim.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED.** The Clerk of the Court is directed to **ENTER JUDGMENT** on behalf of Defendant and **CLOSE THE CASE.**

**DONE** and **ORDERED** in Orlando, Florida on this \_\_\_7\_\_\_ day of December, 2006.

_____
G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties